## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALLIANZ UNDERWRITERS INSURANCE COMPANY, | CIVIL NO: |
| | SECTION: |
| Plaintiff, | |
| | JUDGE: |
| vs. | |
| | MAGISTRATE JUDGE: |
| DENKA PERFORMANCE ELASTOMERS LLC, | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Allianz Underwriters Insurance Company ("Allianz"), by undersigned counsel, bring this Complaint for Declaratory Judgment against Defendant, Denka Performance Elastomers LLC ("Denka"), and alleges as follows:

## INTRODUCTION

1.  This is an action for declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, wherein Allianz seeks a declaration regarding its duties and obligations under an environmental liability policy issued to Denka, with respect to the lawsuit captioned *United States of America v. Denka Performance Elastomer, LLC, et al.,* No. 2:23-cv-00735-EEF-MBN (United States District Court – Eastern District of Louisiana) (the "Underlying Lawsuit").

2.  Specifically, Denka contends that Allianz owes it a duty to defend and indemnify pursuant to environmental liability policy no. USL02621422, effective December 15, 2022 to

December 15, 2023, which was issued by Allianz to Denka (the "Policy").

3.  In contrast, Allianz contends it owes no duty to defend or indemnify Denka pursuant to the express terms and conditions of the Policy, which are more fully discussed below.

4.  Accordingly, an actual, justiciable controversy exists between Allianz, on the one hand, and Denka, on the other, which controversy is subject to resolution by this Court under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

5.  Plaintiff Allianz is an Illinois corporation with its principal place of business in the State of Illinois. At all times material, Allianz has transacted business in the State of Louisiana.

6.  Defendant Denka is a Louisiana corporation, with its principal place of business in the State of Louisiana. Denka owns and operates a manufacturing facility located at 586 Highway 44, LaPlace, Louisiana 70068 ("the Pontchartrain Work Site").

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this action under 28 U.S.C. §2201 and 28 U.S.C. §1332 as complete diversity of citizenship exists between the parties.

8.  The matter in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000), and an actual controversy exists between the parties within the meaning of 28 U.S.C. §2201.

9.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 because the alleged events and omissions which gave rise to this action occurred in this district, and because Denka is subject to this Court's jurisdiction.

## BACKGROUND

**A.    THE UNDERLYING LAWSUIT**

10.    The Underlying Lawsuit was filed in February 2023 by the United States of America ("United States") by authority of the Attorney General of the United States and acting at the request of the Administrator of the United States Environmental Protection Agency (the "EPA"). A copy of the Underlying Lawsuit's Complaint is attached and incorporated as Exhibit "A".

11.    The Underlying Lawsuit alleges that carcinogenic chloroprene emissions from Denka's neoprene manufacturing operations at the Pontchartrain Work Site (the "Facility") present an imminent and substantial endangerment to public health and welfare.

12.    The Underlying Lawsuit alleges that Denka began manufacturing neoprene at the Facility on approximately November 1, 2015.

13.    The Underlying Lawsuit alleges that the Facility's chloroprene emissions traveled into other nearby communities in the Parish, such as Reserve and Edgard, Louisiana.

14.    The Underlying Lawsuit alleges that people living in these communities are being exposed to an unacceptably high risk of developing certain cancers because of Denka's chloroprene emissions.

15.    The Underlying Lawsuit alleges that chloroprene is a liquid raw material used to produce neoprene and that chloroprene is produced using toxic chemicals, including, 1,3-butadiene and chlorine.

16.    The Underlying Lawsuit alleges that chloroprene is hazardous, in part, because it is likely a human carcinogen and that breathing chloroprene increases the risk of developing cancers, such as lung and liver cancer, over the course of a lifetime.

17. The Underlying Lawsuit alleges that infants and children younger than 16 are likely to be especially susceptible to chloroprene's cancer-causing effects and that chloroprene exposure during a person's early years is therefore particularly significant to their lifetime risk of developing cancer.

18. The Underlying Lawsuit alleges that the concentrations of airborne chloroprene in the communities surrounding the Facility are exposing thousands of people living there, including children younger than 16, to lifetime cancer risks that are multiples higher than what is typically considered acceptable by several United States regulatory agencies charged with protecting human health.

19. The Underlying Lawsuit alleges that the only source of chloroprene emissions in St. John the Baptist Parish is Denka's neoprene manufacturing operations at the Facility.

20. The Underlying Lawsuit alleges chloroprene has also been defined as a "hazardous air pollutant" by 42 U.S.C. § 7412(b)(1).

21. The Underlying Lawsuit alleges that neoprene manufacturing operations at the Pontchartrain Works Site have existed for decades, and people have lived there just as long.

22. The Underlying Lawsuit alleges that Denka's chloroprene emissions present an imminent and substantial endangerment to public health and welfare.

23. The Underlying Lawsuit alleges that the endangerment is imminent because Denka emits chloroprene at levels that are producing unacceptably high risks of cancer to the people that are regularly exposed to the Facility's emissions.

24. The Underlying Lawsuit alleges that the endangerment is substantial because Denka's emissions of chloroprene cause ambient levels of chloroprene in nearby communities to be many times greater than the generally accepted threshold for demarcating unacceptably high

cancer risks, and because children living in these communities and attending the schools close to the Facility are likely to be especially susceptible to the cancer risks posed by chloroprene, and that Denka's chloroprene emissions are the cause of this endangerment.

25.   The Underlying Lawsuit seeks injunctive relief under the Clean Air Act Section 303, 42 U.S.C. § 7603, requiring that Denka immediately reduce its chloroprene emissions to levels that no longer cause or contribute to unacceptably high cancer risks within the communities surrounding the Facility.

26.   The Underlying Lawsuit also seeks injunctive relief, pursuant to 42 U.S.C. § 7603, to stop Denka from emitting chloroprene at levels that present an imminent and substantial endangerment to public health and welfare in the communities surrounding the Facility.

27.    The Underlying Lawsuit seeks the following relief: (1) order Denka to immediately take all necessary measures to eliminate the imminent and substantial endangerment posed by chloroprene emissions from the Facility; (2) order Denka to take all other actions as may be necessary to address and mitigate the harm to public health and welfare that Denka's chloroprene emissions have caused; (3) order DuPont Specialty Products to authorize and not impede, under the terms of the Ground Lease, all construction and other necessary measures for Denka to comply with any order issued by the underlying court in the Underlying Lawsuit; and (4) award the United States all other relief as the underlying court in the Underlying Lawsuit deems just and proper.

### B.       THE PRIOR CHLOROPRENE LAWSUITS

28.   On August 9, 2017, Robert Taylor, Jr. and other similarly situated plaintiffs filed a lawsuit against Denka Performance Elastomer LLC and E.I. DuPont De Nemours and Company in the 40th Judicial District Court for St. John the Baptist Parish, State of Louisiana, case no.

2:17-cv-07668-BWA-KWR ("the *Taylor* Lawsuit").

29.   On June 5, 2018, Juanea L. Butler and other similarly situated plaintiffs filed a lawsuit against Denka Performance Elastomer LLC et. al., in the 40th Judicial District Court for St. John the Baptist Parish, State of Louisiana, case no. 2:18-cv-06685-BWA-KWR ("the *Butler* Lawsuit").

30.   On June 8, 2018, Lydia Gerard filed a lawsuit against Denka Performance Elastomer LLC and E.I. DuPont De Nemours and Company in the 40th Judicial District Court for St. John the Baptist Parish, State of Louisiana, case no. 2:18-cv-05739-BWA-KWR ("the *Gerard* Lawsuit").

31.   On July 13, 2018, Donna C. Jackson and other similarly situated plaintiffs filed a lawsuit against Denka Performance Elastomer LLC et. al., in the 40th Judicial District Court for St. John the Baptist Parish, State of Louisiana, case no. 2:18-cv-06692-MLCF-KWR ("the *Jackson* Lawsuit").

32.   The *Taylor*, *Butler, Gerard*, and *Jackson* Lawsuits are collectively referred to as the Prior Chloroprene Lawsuits.

33.   The Prior Chloroprene Lawsuits involve claims relating to alleged emitted chloroprene concentrations from the Facility and the alleged health hazards related to chloroprene in connection with the same Facility identified in the Underlying Lawsuit.

### C.   THE ALLIANZ POLICY

34.   Allianz issued to Denka environmental liability policy no. USL02621422, effective December 15, 2022 to December 15, 2023 (the "Policy"). A copy of the Policy is attached and incorporated as Exhibit "B".

35.   The Policy is subject, in relevant part, to the following limits: (1) $10,000,000 each incident

limit and $10,000,000 aggregate limit for Own Site Clean Up Costs; (2) $10,000,000 each incident limit and $10,000,000 aggregate limit for Off Site Clean-Up Costs; and (3) $10,000,000 each incident limit and $10,000,000 aggregate limit for Third Party Claims For Bodily Injury Or Property Damage.

36.    Each of the above-listed Policy limits are subject to a $250,000 Each Incident Deductible.

37.    Defense costs and expenses covered under the Policy erode the Policy's applicable limits.

38.    The Policy includes the following relevant provisions:

**Section 1 – Insuring Agreements**

**A.    Own Site Clean-up Costs**

The Company will pay on behalf of the **insured**, **clean-up costs** resulting from a **pollution condition** on or under the **insured's own site** that first commenced on or after the retroactive date stated in Item 3. of the Declarations page, provided the **insured** is legally obligated to pay as a result of a **claim** for **clean-up costs** resulting from a **pollution condition**, and such **claim** is first made against the **insured** and reported to the Company during the **period of insurance**, or any **extended reporting period**, if applicable.[1]

**B.    Off Site Clean-up costs**

The Company will pay on behalf of the **insured**, **clean-up costs** resulting from a **pollution condition** migrating from or through and beyond the boundaries of the **insured's own site** that first commenced on or after the retroactive date stated in Item 3. of the Declarations page, provided the **insured** is legally obligated to pay as a result of a **claim** for **clean-up costs** resulting from a **pollution condition**, and such **claim** is first made against the **insured** and reported to the Company during the **period of insurance**, or any **extended reporting period**, if applicable.[2]

**C.    Third Party Claims for Bodily Injury or Property Damage**

The Company will pay on behalf of the **insured**, **loss** that the **insured** becomes legally obligated to pay as a result of a **claim** for **bodily injury** or **property damage** resulting from a **pollution condition** on, under or migrating from or

---

[1] As modified by Endorsement No. 10 – New Conditions Only Endorsement.

[2] As modified by Endorsement No. 10 – New Conditions Only Endorsement.

through the **insured's own site** that first commenced on or after the retroactive date stated in Item 3. of the Declarations page,

provided such **claim** is first made against the **insured** and reported to the Company during the **period of insurance**, or any **extended reporting period**, if applicable.[3]

\* \* \*

## Section 2 – Defense

**A.      Defense**

The Company has the right and the duty to defend the **insured** against a **claim** to which this insurance applies. The Company does not have the duty to defend the **insured** against any **claim** to which this insurance does not apply. The Company will not be obligated to defend the **insured** once the applicable Limit of Liability has been exhausted as provided in Section 3 of this Policy.

\* \* \*

## Section 4 – Definitions

**A.      Bodily injury** means:

1.      Physical injury, sickness, disease, or building-related illness sustained by any person, including death resulting therefrom, and any accompanying medical or environmental monitoring; or

2.      Mental anguish, shock or emotional distress; or

3.      Medical monitoring ordered by a court of competent jurisdiction.

\* \* \*

**D.      Clean-up costs** means reasonable and necessary expenses, including legal expenses incurred with the Company's written consent, which consent shall not be unreasonably withheld or delayed, for the investigation, removal, treatment, containment, neutralization, abatement, monitoring or disposal of soil, surface water, groundwater or other contamination:

1.      To the extent required by **environmental laws**;

2.      In absence of any applicable **environmental laws**, to the extent recommended in writing by an **environmental professional**; or

---

[3] As modified by Endorsement No. 10 – New Conditions Only Endorsement.

3.      That have been actually incurred by the government or any political subdivision of the United States of America or any state thereof or Canada or any province thereof, or by third parties.

**Clean-up costs** also include **restoration costs**.

\*       \*       \*

**H.**   **Environmental law** means any federal, state, provincial or local laws, including but not limited to, statutes, rules, regulations, ordinances, guidance documents, voluntary cleanup programs, and governmental, judicial or administrative orders and directives that are applicable to a **pollution condition**.

**I.**   **Environmental professional** means an individual or entity approved by the Company in writing that is duly licensed and certified to provide environmental services by a state board or professional association. The Company will consult with the **insured** in the selection of the **environmental professional**.

\*       \*       \*

**L.**   **Insured** means the **named insured**, and any past or present director, officer, partner, member, manager, or employee, including any temporary or leased employee, while acting within the scope of his or her duties as such.

\*       \*       \*

**N.**   **Insured's own site** means each of the locations owned, leased, managed or operated by the **insured**, stated in the Declarations, or specifically scheduled on the Policy by endorsement.[4]

\*       \*       \*

**T.**   **Natural resource damage** means the physical injury to or destruction of, as well as the assessment of such injury or destruction, including the resulting loss of value of land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Conservation and Management Act (16 U.S.C. 1801 et seq.)), and any state, local or provincial government, any foreign government, any Indian tribe, or if such resources are subject to a trust restriction on alienation, any members of an Indian tribe.

\*       \*       \*

---

[4] As modified by Endorsement No. 8 (Form AGRL-PRM 4304 (02-22))

9

**Y.**     **Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, odors, soot, fumes, acids, alkalis, toxic chemicals, hazardous substances, **microbial matter**, Legionella pneumophila, methamphetamines, electromagnetic fields, low level radioactive waste, medical waste including infectious and pathological waste and waste materials, at levels in excess of those naturally occurring.

**Z.**     **Pollution condition** means the discharge, dispersal, release or escape, emission, seepage, or illicit abandonment by a third party without the **insured's** consent, of any **pollutant** into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater.

**Pollution condition** also means the presence of **microbial matter** within a structure.

\*          \*          \*

**BB.**     **Property damage** means:

1. Physical injury to or destruction of tangible property of parties other than the **insured**, including the resulting loss of use and except with respect to tangible property located on an **insured's own site**, diminished value of that property;

2. Loss of use, but not diminution of value, of tangible property or parties other than the **insured**, that has not been physically injured or destroyed; or

3. **Natural resource damage**.

**Property damage** does not include **clean-up costs**.

\*          \*          \*

**DD.**     **Responsible insured** means:

1. the manager or supervisor of the **named insured** responsible for environmental affairs, control or compliance (a) at the **insured's own site,** (b) during **transportation,** or (c) during **covered operations**;

2. the manager of the **insured's own site**; or

3. any officer, director, partner, or member of the **named insured**.

\*          \*          \*

**Section 5.1. – Exclusions**

This Policy does not apply to:

\*        \*        \*

**G.     Intentional noncompliance**

**Loss** arising from an intentional or illegal act or omission of any **responsible insured**.

This Exclusion does not apply to noncompliance based upon:

1.      The **insured's** good faith reliance upon the written advice of qualified outside counsel received in advance of such noncompliance; or

2.      The **insured's** reasonable response to mitigate a **pollution condition** or **loss**, provided that such circumstances are reported in writing to the Company within three (3) days of commencement.

\*        \*        \*

**Section 6 – Conditions**

\*        \*        \*

**J.      Representations**

By accepting this Policy, the **named insured** agrees that the statements in the Declarations, schedules and endorsements to, and Application are accurate and complete, and this Policy is issued in reliance upon the truth of such representations.

\*        \*        \*

**AMENDMENT TO EXCLUSIONS**

This Endorsement modifies insurance provided under the following:

**ENVIRONMENT PROTECT PREMISES**

This policy is amended as follows:

1.      The following is added to **Section 5.1 - Exclusions**:

**Costs to maintain, upgrade, improve or install**

**Loss** or any costs to maintain, upgrade, improve or install equipment, as a preventative measure, to any property or processes on, under, or associated with the **insured's own site**

11

even if such maintenance, upgrade, improvement or installation is required by any governmental entity with authority acting pursuant to **environmental laws**.

\*        \*        \*

**Deed Restriction**

**Loss** arising from an **insured's** material violation of or non-compliance with any deed restriction, activity or land use limitation, engineering control or covenant that is or is to be implemented on, under, or associated with the **insured's own site** by any governmental entity with authority acting pursuant to **environmental laws**.

2.        The following is added to **Section 6 - Conditions**:

By acceptance of this Policy, the **named insured** agrees to comply with any deed restriction, activity or land use limitation, engineering control or covenant associated with the **insured's own site** and the **named insured** understands and acknowledges that this Policy is issued in reliance upon such agreement.

\*        \*        \*

## KNOWN CLAIM(S) EXCLUSION ENDORSEMENT

This Endorsement modifies insurance provided under the following:

## ENVIRONMENT PROTECT PREMISES

This policy is amended as follows:

The following is added to **Section 5.1 - Exclusions**:

This Policy does not apply to **Loss**:

**Known Claim(s):**

Arising from any **pollution condition** associated with a known **claim** or legal action existing prior to the first date of the **period of insurance** and known by a **responsible insured** as disclosed in the application or submission materials including, but not limited to:

Steadfast Insurance Company Policy EPC-0187462; Claim 9410567818

\*        \*        \*

## SCHEDULE OF INSURED'S OWN SITE(S) AND RETROACTIVE DATE AMENDATORY (LIMITED APPLICABILITY) ENDORSEMENT

12

This Endorsement modifies insurance provided under the following:

**ENVIRONMENT PROTECT PREMISES**

This policy is amended as follows:

This Policy is amended to include the following Schedule of **insured's own site(s)**, and solely with respect to an **insured's own site** listed in such Schedule of **insured's own site(s)**, the DECLARATIONS, ITEM 3. RETROACTIVE DATE is deleted in its entirety and replaced with the retroactive date(s) listed in such Schedule of **insured's own site(s)**:

| Schedule of insured's own site(s) | |
|---|---|
| **Insured's own site(s) - Active Location(s)** | **Retroactive Date(s)** |
| 1. Pontchartrain Site – 560 Highway 44, LaPlace, LA 70068 (Per Exhibit 1(J) Form of Ground Lease on file with the Company) | Except with respect to **loss** or **claim** arising from a **pollution condition** due or associated with air emissions: November 1, 2015<br><br>Solely with respect to **loss** or **claim** arising from a **pollution condition** due or associated with air emissions: November 1, 2019… |

\*       \*       \*

## COUNT I – DECLARATORY RELIEF
### (No Duty To Defend)

39.     Allianz re-alleges the allegations of paragraphs 1 through 38 above as if fully set forth herein.

40.     The Policy potentially provides coverage under Section 1 for, in relevant part, **Own Site Clean-Up Costs, Off Site Clean-Up Costs,** and **Third Party Claims for Bodily Injury or Property Damage** ("Section 1 Coverages").

41. There is no coverage with respect to the Underlying Lawsuit under the Policy including Section 1 Coverages, for one or more of the following reasons.

**A.**   <u>**Own Site Clean-Up Costs**</u>

42. Coverage for **Own Site Clean-Up Costs** is not implicated because the Underlying Lawsuit does not seek **clean-up costs** resulting from a **pollution condition** on or under the **insured's own site** for which the **insured** is legally obligated to pay as a result of a **claim** for **clean-up costs** resulting from a **pollution condition**.

43. The Underlying Lawsuit therefore does not seek sums that Denka is legally obligated to pay as a result of a **claim** for **clean-up costs** resulting from a **pollution condition.**

44. Accordingly, Allianz has no defense obligation to Denka under the Policy's **Own Site Clean-Up Costs** coverage with respect to the Underlying Lawsuit.

**B.**   <u>**Off Site Clean-Up Costs**</u>

45. Coverage for **Off Site Clean-Up Costs** is not implicated because the Underlying Lawsuit does not seek **clean-up costs** resulting from a **pollution condition** migrating from or through and beyond the boundaries of the **insured's own site**, for which the **insured** is legally obligated to pay as a result of a **claim** for **clean-up costs** resulting from a **pollution condition.**

46. The Underlying Lawsuit therefore does not seek sums that Denka is legally obligated to pay as a result of a **claim** for **clean-up costs** resulting from a **pollution condition.**

47. Accordingly, Allianz has no defense obligation to Denka under the Policy's **Off Site Clean-Up Costs** coverage with respect to the Underlying Lawsuit.

**C.**   <u>**Third Party Claims for Bodily Injury or Property Damage**</u>

14

48. Coverage for **Third Party Claims for Bodily Injury or Property Damage** is not implicated because the Underlying Lawsuit does not seek damages as a result of a **claim** for **bodily injury** or **property damage** resulting from a **pollution condition** on, under or migrating from or through the **insured's own site**.

49. The Underlying Lawsuit therefore does not seek sums that Denka is legally obligated to pay as a result of a **claim** for **bodily injury** or **property damage** resulting from a **pollution condition** on, under or migrating from or through the **insured's own site**.

50. Accordingly, Allianz has no defense obligation to Denka under the Policy's **Third Party Claims for Bodily Injury or Property Damage** coverage with respect to the Underlying Lawsuit.

**D.      <u>Exclusion 5.1 – Known Claim(s)</u>**

51. The Policy's **Known Claim(s)** exclusion provides that the Policy does not apply to **Loss** arising from any **pollution condition** associated with a known **claim** or legal action existing prior to the first date of the **period of insurance** and known by a **responsible insured** as disclosed in the application or submission materials including, but not limited to: Steadfast Insurance Company Policy EPC-0187462; Claim 9410567818.

52. Prior to the filing of the Underlying Lawsuit, Denka was sued in the Prior Chloroprene Lawsuits, which alleged claims involving emitted chloroprene concentrations from the Facility and the alleged health hazards related to those emissions.

53. The alleged chloroprene emissions pollution in the Underlying Lawsuit arises from **pollution conditions** associated with the Prior Chloroprene Lawsuits.

54. The Steadfast Insurance Company Policy EPC-0187462; Claim 9410567818 is associated with one or more of the Prior Chloroprene Lawsuits.

55. The Prior Chloroprene Lawsuits were filed before the Policy's December 15, 2022 to December 15, 2023 **period of insurance**, and were known to a **responsible insured** within Denka.

56. Accordingly, the Policy's **Known Claim(s)** exclusion precludes coverage for all amounts sought by the Underlying Lawsuit, and therefore Allianz owes no defense obligation to Denka.

<u>**COUNT II – DECLARATORY RELIEF**</u>
**(No Duty To Indemnify)**

57. Allianz re-alleges the allegations of paragraphs 1 through 56 above as if fully set forth herein.

58. The Allianz Policy includes coverage parts under Section 1 for, in relevant part, **Own Site Clean-Up Costs, Off Site Clean-Up Costs,** and **Third Party Claims for Bodily Injury or Property Damage** (the "Section 1 Coverage").

59. There is no coverage with respect to the Underlying Lawsuit under the Policy including Section 1 Coverage, for one or more of the following reasons.

**A.** <u>**Own Site Clean-Up Costs**</u>

60. Coverage for **Own Site Clean-Up Costs** is not implicated because the Underlying Lawsuit does not seek **clean-up costs** resulting from a **pollution condition** on or under the **insured's own site** for which the **insured** is legally obligated to pay as a result of a **claim** for **clean-up costs** resulting from a **pollution condition**.

61. The Underlying Lawsuit therefore does not seek sums that Denka is legally obligated to pay as a result of a **claim** for **clean-up costs** resulting from a **pollution condition.**

62. Accordingly, Allianz has no indemnification obligation to Denka under the Policy's **Own Site Clean-Up Costs** coverage with respect to the Underlying Lawsuit.

**B.** <u>**Off Site Clean-Up Costs**</u>

16

63.   Coverage for **Off Site Clean-Up Costs** is not implicated because the Underlying Lawsuit does not seek **clean-up costs** resulting from a **pollution condition** migrating from or through and beyond the boundaries of the **insured's own site**, for which the **insured** is legally obligated to pay as a result of a **claim** for **clean-up costs** resulting from a **pollution condition.**

64.   The Underlying Lawsuit therefore does not seek sums that Denka is legally obligated to pay as a result of a **claim** for **clean-up costs** resulting from a **pollution condition.**

65.   Accordingly, Allianz has no indemnification obligation to Denka under the Policy's **Off Site Clean-Up Costs** coverage with respect to the Underlying Lawsuit.

**C.      Third Party Claims for Bodily Injury or Property Damage**

66.   Coverage for **Third Party Claims for Bodily Injury or Property Damage** is not implicated because the Underlying Lawsuit does not seek damages as a result of a **claim** for **bodily injury** or **property damage** resulting from a **pollution condition** on, under or migrating from or through the **insured's own site**.

67.   The Underlying Lawsuit therefore does not seek sums that Denka is legally obligated to pay as a result of a **claim** for **bodily injury** or **property damage** resulting from a **pollution condition** on, under or migrating from or through the **insured's own site**.

68.   Accordingly, Allianz has no indemnification obligation to Denka under the Policy's **Third Party Claims for Bodily Injury or Property Damage** coverage with respect to the Underlying Lawsuit.

**D.      Exclusion 5.1 – Known Claim(s)**

69.   The Policy's Known Claim(s) exclusion provides that the Policy does not apply to **Loss** arising from any **pollution condition** associated with a known **claim** or legal action existing

prior to the first date of the **period of insurance** and known by a **responsible insured** as disclosed in the application or submission materials including, but not limited to: Steadfast Insurance Company Policy EPC-0187462; Claim 9410567818.

70. Prior to the filing of the Underlying Lawsuit, Denka was sued in the Prior Chloroprene Lawsuits, which allege emitted chloroprene concentrations and the health hazards related to chloroprene in connection with the same Facility identified in the Underlying Lawsuit.

71. The Prior Chloroprene Lawsuits involve claims relating to emitted chloroprene concentrations and the alleged health hazards related to chloroprene in connection with the same Facility identified in the Underlying Lawsuit.

72. The alleged chloroprene emissions pollution in the Underlying Lawsuit arises from **pollution conditions** associated with the Prior Chloroprene Lawsuits.

73. The Steadfast Insurance Company Policy EPC-0187462; Claim 9410567818 is associated with one or more of the Prior Chloroprene Lawsuits.

74. The Prior Chloroprene Lawsuits were filed before the Policy's December 15, 2022 to December 15, 2023 **period of insurance**, and were known to a **responsible insured** within Denka.

75. Accordingly, the Policy's Known Claim(s) exclusion precludes coverage for the damages that may be awarded in the Underlying Lawsuit, and therefore Allianz owes no indemnification obligation to Denka.

**E.**   **Exclusion 5.1 – Costs to Maintain, Upgrade, Improve or Install**

76. The Policy includes an exclusion for costs to maintain upgrade, improve, or install, which excludes coverage for **loss** or any costs to maintain, upgrade, improve or install equipment, as a preventative measure, to any property or processes on, under, or associated with the

**insured's own site** even if such maintenance, upgrade, improvement or installation is required by any governmental entity with authority acting pursuant to **environmental laws.**

77. To the extent the Denka becomes liable for any amounts in connection with the Underlying lawsuit that are **loss** or any costs to maintain, upgrade, improve or install equipment, as a preventative measure, to any property or processes on, under, or associated with the **insured's own site** even if such maintenance, upgrade, improvement or installation is required by any governmental entity with authority acting pursuant to **environmental laws**, the Policy does not provide coverage, and therefore Allianz owes no indemnification obligation to Denka for those costs, charges or expenses.

**F.     Exclusion 5.1(G) – Intentional Noncompliance**

78. The Policy includes an exclusion for intentional noncompliance, which provides, in relevant part, that the Policy does not provide coverage for **Loss** arising from an intentional or illegal act or omission of any **responsible insured**.

79. To the extent that Denka becomes liable for **Loss** arising from an intentional or illegal act or omission of any **responsible insured** in the Underlying Lawsuit, the Policy does not provide coverage for that amount, and therefore Allianz owes no indemnification obligation to Denka for that amount.

**G.     Exclusion 5.1(H) – Internal Expenses**

80. The Policy includes an exclusion for internal expenses which provides, in relevant part, that the Policy does not provide coverage for costs, charges or expenses incurred by the **insured** for goods supplied or services performed by the staff or salaried employees of the **insured**, or its parent, subsidiary or affiliate, unless such costs, charges or expenses are incurred with the prior written approval of the Company, in its sole discretion.

81.   To the extent Denka seeks coverage for costs, charges or expenses incurred by Denka in connection with the Underlying Lawsuit for goods supplied or services performed by the staff or salaried employees of Denka, or its parent, subsidiary or affiliate, the Policy does not provide coverage, and therefore Allianz owes no indemnification obligation to Denka for those costs, charges or expenses.

### H.      Exclusion – Deed Restriction

82.   The Policy includes an exclusion for Deed Restriction which provides, in relevant part, that the Policy does not provide coverage for **Loss** arising from an **insured's** material violation of or non-compliance with any deed restriction, activity or land use limitation, engineering control or covenant that is or is to be implemented on, under, or associated with the **insured's own site** by any governmental entity with authority acting pursuant to **environmental laws**.

83.   To the extent the Denka owes any amounts in connection with the Underlying lawsuit that are **Loss** arising from Denka's material violation of or non-compliance with any deed restriction, activity or land use limitation, engineering control or covenant that is or is to be implemented on, under, or associated with the **insured's own site** by any governmental entity with authority acting pursuant to **environmental laws**, the Policy does not provide coverage, and therefore Allianz owes no indemnification obligation to Denka for those amounts.

84.   An actual controversy exists between Allianz and Denka regarding whether Allianz has an indemnification obligation with respect to the Underlying Lawsuit.

85.   A judicial declaration is necessary to resolve the controversy between the parties.

86.   Under 28 U.S.C. § 2201 et seq., Allianz is entitled to a declaration by this Court that: (a) Allianz has no coverage obligation under the Policy including Section I Coverage; and (b) accordingly, Denka can have no recovery from Allianz in relation to the Underlying Lawsuit.

## COUNT III – DECLARATORY RELIEF
### (Reimbursement Of Defense Costs)

87.   Allianz re-alleges the allegations of paragraphs 1 through 86 above as if fully set forth herein.

88.   As set forth above, Allianz does not owe any obligations to Denka under the Policy in relation to the Underlying Lawsuit.

89.   Allianz has paid defense costs in connection with the Underlying Lawsuit, under a full reservation to seek reimbursement of defense costs, and Allianz is entitled to a declaration that Allianz shall be reimbursed by Denka for all defense costs that Allianz has paid in connection with the Underlying Lawsuit.

WHEREFORE, ALLIANZ UNDERWRITERS INSURANCE COMPANY respectfully prays that this Honorable Court enter an order:

(1) declaring that Allianz has no duty to defend to Denka with respect to the Underlying Lawsuit;

(2) declaring that Allianz has no duty to indemnify to Denka with respect to the Underlying Lawsuit;

(3) declaring that Denka must reimburse Allianz for any defense costs made on behalf of Denka with respect to the Underlying Lawsuit and awarding Allianz those amounts; and

(4) granting Allianz such other and further relief as this Honorable Court deems just and appropriate, including costs.

Respectfully submitted:


/s/*Kelly L. Stoltz*

**NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP**
KELLY L. STOLTZ (*pro hac vice* pending)
JAMES A. HOLEVAS (*pro hac vice* pending)
10 South Wacker Drive, Suite 2100
Chicago, Illinois 60606
Telephone: (312) 585-1400
Email: kstoltz@nicolaidesllp.com
        jholevas@nicolaidesllp.com


and


/s/*Rachel G. Webre*

**GIEGER, LABORDE & LAPEROUSE, LLC**
RACHEL G. WEBRE **(**Bar No. 26907**)**
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504)561-0400
Email:  rwebre@glllaw.com


Attorneys for Plaintiff
*ALLIANZ UNDERWRITERS INSURANCE COMPANY*